Ruth Tech, Appellant *v.* Wattsburg Area School District Board of Education, Appellee.

Argued May 6, 1977, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*Jay Bryan Schiegg*, with him *Shamp, Levin, Arduini and Hain*, for appellant.

*William T. Jorden*, with him *McClure, Dart, Miller & Kelleher*, for appellee.

OPINION BY JUDGE WILKINSON, JR., May 31, 1977:

The question presented in this case is whether the Erie County Court of Common Pleas erred in its affirmance of appellee's dismissal of appellant as a school bus driver pursuant to Section 514 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §5-514. We find no error.

Appellant was a school bus driver for 15 years, during the last seven of which she was employed by appellee and drove one of the most lengthy and difficult bus runs in the district. She had not had a bus accident in which she was at fault on that run or at any other time as a school bus driver. During the early morning hours of October 11, 1975, while driving her family car, appellant lost control and the car swerved into a ditch and damaged a mailbox and residential driveway. No charges were filed against appellant.

On October 15, 1975, appellant was notified by appellee's superintendent that, effective the next day, she was being suspended without pay pending a hearing. The suspension was based upon "verified information" that appellant had been involved in a hit and run accident on October 11, 1975 for which she had been arrested, and "other reports to the effect that [her] automobile insurance was cancelled because of other accidents and a poor driving record."

At the hearing, appellant testified that the accident of October 11, 1975, had occurred under unusual circumstances. She said she had been upset following a dispute with her husband, had gone to her mother's home nearby, had called to say she was returning home and subsequently had begun driving around aimlessly to "clear my mind." After she did not arrive home within a reasonable time, her husband took the family's other car to find her. Appellant said she was so startled at seeing the family's other car approaching that she lost control of her car and it swerved into a ditch. After appellant's son ascertained that the property owners were either asleep or not at home, appellant's husband and son took her to the hospital where she was later found to have suffered broken ribs. Appellant said her husband contacted the property owners, who were acquaintances of appellant, at approximately eight o'clock that morning. She said that she had made arrangements for restitution, a fact which was confirmed by the testimony of the property owner. The property owner testified further that he first learned the identity of the driver from the police, although an anonymous caller did confess responsibility at about eight o'clock that morning.

On the charge relating to her driving record, appellant admitted that she had had an accident while driving her family car in November 1974 (caused by a skid on an ice patch) and, on an earlier occasion,

had been given points for a speeding violation. She stated, however, that her automobile insurance had not been cancelled because of any accidents on her part. Rather, her family insurance had been cancelled because one of her sons had been involved in several accidents, but appellant and her husband were subsequently issued a standard policy covering themselves. She testified further as to her excellent record as a bus driver, the difficulty of her route, and that several of appellee's other drivers had been involved in bus accidents in which they had been at fault (including some in which the busses were carrying children), but had not been disciplined in any way. These statements as to her route and bus driving ability were supported by other testimony, including that of another driver, who stated that he had driven a bus, containing children, into ditches three times in one day because of "poor judgment on my part" without disciplinary action.

Appellee's superintendent, who prosecuted the case against appellant, presented testimony of the school insurance agent, who stated that he considered appellant a poor risk because of her recent personal accidents. He admitted, however, that he knew of no bus accidents in which appellant had been at fault and that appellant had never caused appellee's fleet insurance premium to be surcharged. The school business manager testified that he had received complaints from several students that appellant "seem[ed] to doze off" while driving the bus and then would suddenly slam on the brakes for no reason. He also testified that he had received complaints that appellant had allegedly cancelled her scheduled run from a parochial school on religious holidays (when only a few students attended), had diverted her bus from its scheduled route, had encouraged students to protest a route change and had frequently arrived 25 minutes late to begin a late

afternoon run. Appellant denied the allegations and offered explanations of her conduct. Nonetheless, appellee voted unanimously to dismiss her. It found as facts that appellant had been involved in an accident on October 11, 1975, involving property damage and personal injury to appellant and a prima facie case of hit and run had been made out; that on November 27, 1974, appellant was involved in an accident involving damages and injury; that appellant had at least six points against her driving record prior to February 12, 1973, at which time she was required to attend driving school; and that she has not had an accident while driving a bus for appellee. Appellee concluded that its continued employment of appellant would ''expose our children to unreasonable risk and hazard.'' The court below affirmed, ruling that, although the allegation as to the cancellation of appellant's insurance was not sustained by the evidence, appellee had not abused its discretion in dismissing appellant. This appeal followed.

Appellant contends that appellee failed to furnish her with charges which lead to the findings of fact relating to her accident of November 27, 1974, and the points assessed against her driving record and therefore violated her rights of due process. We cannot agree. A notice of suspension satisfies due process if ''framed in a manner which enables the employee to discern the nature of the charges and to adequately prepare his defense. [Citations omitted.]'' *Benjamin v. State Civil Service Commission*, 17 Pa. Commonwealth Ct. 427, 430, 332 A.2d 585, 587 (1975). Here, appellee's charge referring to ''other accidents and a poor driving record,'' although framed in the context of an alleged cancellation of appellant's insurance, clearly enabled appellant to discern that past violations or accidents, as well as the October 11, 1975 accident, might be considered by appellee in its

decision. Indeed, the record shows that counsel for appellant made no objection to the questions through which appellant admitted her accident of November 27, 1974 and her prior speeding citation.

Appellant also contends that appellee's decision was unsupported by the requisite substantial evidence. While appellant argues that she was not guilty of a "hit and run" offense under Section 1027(d) of The Vehicle Code,[1] relevant to appellee's decision was not whether she was actually prosecuted for such an offense but rather the circumstances of the accident and their relation, if any, to appellant's conduct as a bus driver. Appellant admitted that the accident occurred because she was upset and that a similar reason caused her to request a substitute bus driver at least once. Considering the nature of that accident, especially in light of appellant's previous accident less than a year earlier and her prior citation for speeding, we cannot say that appellee abused its discretion in dismissing her.

Accordingly, we will enter the following

### ORDER

Now, May 31, 1977, the order of the Erie County Court of Common Pleas, No. 4551-A 1975, dated July 14, 1976, dismissing the appeal of Ruth Tech from the decision of the Wattsburg Area School District Board of Education, dated October 27, 1975, dismissing her as a school bus driver, is hereby affirmed.

---

[1] Act of April 29, 1959, P.L. 58, *as amended*, 75 P.S. §1027(d).